IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

THOMAS MANIS,
    Plaintiff,

v.

STATE OF TENNESSEE, DEPT OF SAFETY AND
HOMELAND SECURITY, an agency of the State of Tennessee;
FRANK WILLIAM "BILLY" YATES-MATOY in his individual
and official capacity as a State Trooper; and
RILEY SHREINER in his individual and official capacity as a
STATE TROOPER;
    Defendants.

Docket No._____
JURY DEMAND

_____

# COMPLAINT
_____

Plaintiff, Thomas Manis, by and through counsel, brings this civil rights action seeking monetary damages against Defendants for violations of Plaintiff's rights guaranteed by the United States Constitution and Tennessee law resulting from his false arrest and incarceration. In support of this Complaint, Plaintiff Thomas Manis, states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3) because the controversy arises under the U.S. Constitution and 42 U.S.C. §1983.

2. This Court also has supplemental jurisdiction over claims asserted against Defendants under Tennessee State law pursuant to 28 U.S.C. §1367.

3. Venue is proper in the Eastern District of Tennessee under 28 U.S.C. §1391(b)(2) because a substantial portion of the events giving rise to this action occurred within this District.

4. Plaintiff brings this lawsuit to redress Defendants' violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution and his civil rights pursuant to 42 U.S.C. §1983, as well as violations of state law.

1

5. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom or usage of rights, privileges and immunities secured to Plaintiff by the Constitution and laws of the United States. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988.

6. Plaintiff also seeks monetary damages (special, compensatory, and punitive) against Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

PARTIES

7. Plaintiff, Thomas Manis, is a citizen of the United States and a resident of Monroe County, Tennessee.

8. Defendant Trooper Riley Shreiner ("Officer Shreiner") is and/or was at the time of the incident complained of herein an officer with the Tennessee Highway Patrol. He is sued in his individual capacity for misconduct occurring under color of state law.

9. Defendant Frank William "Billy" Yates-Matoy ("Officer Yates-Matoy") is and/or was at the time of the incident complained of herein an officer with the Tennessee Highway Patrol. He is sued in his individual capacity for misconduct occurring under color of state law.

10. Defendants Officer Shreiner and Officer Yates-Matoy may be served at the headquarters for the Tennessee Highway Patrol located at 1755 Neals Commerce Ln, Knoxville, Tennessee 37914.

11. Defendant State of Tennessee is the governmental entity which governs and is liable for any malfeasance of the Tennessee Highway Patrol.

12. Defendant Tennessee Department of Safety is a governmental entity organized under the laws of the State of Tennessee. The Tennessee Department of Safety is an instrumentality of the State of Tennessee. The State may be served through the Commissioner of

the Department of Safety & Homeland Security, Jeff Long, at 312 Rosa L. Parks Avenue, Nashville, TN 37243

**FACTS**

13. On December 29, 2023, Plaintiff was driving on US 411 in Monroe County, Tennessee.

14. Officer Shreiner, training under the supervision of Officer Yates-Matoy, was monitoring traffic after daylight in the morning hours of December 29, 2023.

15. Officer Shreiner activated his blue lights and required the Plaintiff to pull to the side of the roadway.

16. The Plaintiff complied fully and waited calmly in his vehicle as Officer Shreiner approached.

17. Officer Shreiner stated the basis of the stop was the tint level on Plaintiff's vehicle windows.

18. Plaintiff affirmatively states the field comparison test conducted by Officer Shreiner of the window tint level as required by *Tennessee Code Annotated* §55-9-107 was subjective and the citation was later dismissed.

19. Officer Shreiner asked Plaintiff for his driver's license, registration, and proof of insurance.

20. Plaintiff complied with the request immediately without complaint.

21. During all times during this police/citizen encounter the Plaintiff was respectful, restrained, courteous, and compliant.

22. At no time did any of the Defendants observe, or claim to observe, Plaintiff driving or engaging in any conduct which would cause any reasonable law enforcement officer

3

to suspect Plaintiff was driving under the influence of an intoxicant or otherwise engaging in unlawful behavior.

23. Officer Shreiner returned to his patrol cruiser and spoke to Officer Yates-Matoy.

24. Body cam footage captured Officer Shreiner advising Officer Yates-Matoy that he saw no evidence of intoxication, nor did he smell marijuana.

25. Upon learning of the Plaintiff's identity, Officer Yates-Matoy stated that he knew the Plaintiff's brother and he "guaranteed" Plaintiff had weed in his vehicle and that Plaintiff had probably smoked weed the morning of the incident in question.

26. Plaintiff affirmatively states that he had no prior criminal record on December 29, 2023.

27. Officer Shreiner approached Plaintiff's vehicle for the second time and began interrogating Plaintiff about drug use and asked for permission to search the vehicle.

28. Officer Shreiner asked for permission because no probable cause existed to search Plaintiff's vehicle and Officer Shreiner sought to elicit consent for a search he could not otherwise perform.

29. Although the Plaintiff did not affirmatively consent to a search, he did truthfully tell Officer Shreiner there was nothing illegal in the truck.

30. Nonetheless, Officer Shreiner concluded that Plaintiff had consented and conducted a warrantless search of Plaintiff's vehicle but found no illegal substances.

31. Plaintiff asked Officer Shreiner why he was being interrogated.

32. Officer Shreiner responded that Plaintiff's eyes were red, therefore Plaintiff was suspected of driving under the influence.

33. Plaintiff advised Officer Shreiner that his eyes were red because he had just woken up.

34. Plaintiff affirmatively asserts that this was an unreasonable and unlawful extension of the traffic stop without a proper basis.

35. Officer Shreiner returned to the patrol car and again conferred with Officer Yates-Matoy.

36. Plaintiff did not feel, and no reasonable person would have felt, free to terminate the encounter with Officer Shreiner.

37. Officer Shreiner approached Plaintiff's vehicle for a third time and instructed Plaintiff to exit the vehicle.

38. Plaintiff asked Officer Shreiner if he could call his lawyer before he exited his vehicle.

39. Officer Shreiner ignored Plaintiff's request to contact legal counsel and instructed Plaintiff again to exit his vehicle.

40. Officer Shreiner then conducted a field sobriety test which consisted of a Horizontal Gaze Nystagmus Test, a Walk and Turn Test, and a Straight Leg Raise test.

41. Officer Shreiner did not ask Plaintiff if he consented to taking a field sobriety test; although Plaintiff politely complied with the officer's instructions without protest.

42. Plaintiff successfully performed each test conducted by Officer Shreiner.

43. Unsatisfied with Plaintiff's successful performance of the sobriety tests, Officer Yates-Matoy took over the investigation and began interrogating Plaintiff about prior drug use.

44. Officer Yates-Matoy warned Plaintiff that ninety-nine percent (99%) of the time he knew the answers to the questions he was going to ask before he even asked the questions during his interrogations.

45. Officer Yates-Matoy asked Plaintiff "When did you last smoke marijuana?" to which Plaintiff honestly responded that it had been four (4) years prior to December 29, 2023.

5

Case 1:24-cv-00262-CLC-CHS   Document 1   Filed 08/01/24   Page 5 of 17   PageID #: 5

46. Again, unsatisfied with Plaintiff's response, Officer Yates-Mattoy administered additional field sobriety tests.

47. Officer Yates-Matoy did not request consent from the Plaintiff; although Plaintiff complied without protest.

48. Again, body camera footage shows the Plaintiff successfully performed the tests administered by Officer Yates-Matoy.

49. Officer Yates-Matoy, however, determined that Plaintiff failed the tests and directed Officer Shreiner to place Plaintiff under arrest on charges of Driving Under the Influence in violation of *Tennessee Code Annotated* §55-10-401.

50. Plaintiff was placed in the back of the patrol car, despondent, dehumanized, handcuffed and, in fact, sober as established by the blood test subsequently administered.

51. At the time of his arrest, Plaintiff had neither committed a crime nor violated any other statute or regulation.

52. Defendants acknowledged that the sole purpose of the stop was to determine whether Plaintiff's vehicle window tint was too dark.

53. No reasonable person, much less a law enforcement officer, would have believed or suspected that Plaintiff was driving under the influence.

54. Plaintiff was arrested, booked into the local jail, and charged with driving under the influence.

55. Plaintiff submitted to a blood test upon arriving at the local jail.

56. Plaintiff affirmatively states that his test was negative for all illegal substances.

57. Additionally, Plaintiff affirmatively states that the blood tests administered on December 29, 2023, were negative for Ethyl Alcohol, basic drugs, opiates, buprenorphine,

6

cannabinoids, cocaine, barbiturates, benzodiazepines, methamphetamine, fentanyl, oxycodone and/or oxymorphone as indicated in the excerpts of the results below.




**TENNESSEE BUREAU OF INVESTIGATION**
KNOXVILLE CRIME LABORATORY
1791 Neals Commerce Lane
Knoxville, Tennessee 37914

BILL LEE
Governor

DAVID B. RAUSCH
Director

## OFFICIAL TOXICOLOGY REPORT

TO: Riley Shreiner
    THP - Knoxville, Dist. 1
AGENCY CASE NO: 123091690

DATE ISSUED: 4/10/24
LAB CASE NO: 242000366
COUNTY: Monroe

**SUBJECT(S)**
THOMAS EVERETT MANIS

Received From: THP - Knoxville
Received By: Mika Lay
Date Received: 1/9/24
Time Received: 4:30 pm

**EXHIBIT(S):**
001     Blood Sample
Collected: 12/29/23 01:23 PM

| RESULTS | Substance | Amount | Instrumentation |
|---|---|---|---|
| 001 | No basic drugs detected | | GC/MS |
| | Opiates presumptively not detected. | | ELISA |
| | Buprenorphine presumptively not detected. | | ELISA |
| | Cannabinoids presumptively not detected. | | ELISA |
| | Cocaine presumptively not detected. | | ELISA |
| | Barbiturates presumptively not detected. | | ELISA |
| | Benzodiazepines presumptively not detected. | | ELISA |
| | Methamphetamine presumptively not detected. | | ELISA |
| | Oxycodone and/or oxymorphone presumptively not detected. | | ELISA |
| | Fentanyl presumptively not detected. | | ELISA |

Analysis Completed on: 4/3/2024     4:05 pm




**TENNESSEE BUREAU OF INVESTIGATION**
KNOXVILLE CRIME LABORATORY
1791 Neals Commerce Lane
Knoxville, Tennessee 37914

BILL LEE
Governor

DAVID B. RAUSCH
Director

## OFFICIAL ALCOHOL REPORT

TO: Riley Shreiner
    THP - Knoxville, Dist. 1
AGENCY CASE NO: 123091690

DATE ISSUED: 2/12/24
LAB CASE NO: 242000366
COUNTY: Monroe

**SUBJECT(S)**
THOMAS EVERETT MANIS

Received From: THP - Knoxville
Received By: Mika Lay
Date Received: 1/9/24
Time Received: 4:30 pm

**EXHIBIT(S):**
001     Blood Sample
Collected: 12/29/23 01:23 PM

| Results | Substance Type | Amount | Analysis Completed On: |
|---|---|---|---|
| 001 | Ethyl Alcohol (Gram %) | Negative | 1/29/2024   9:05 am |

All compounds confirmed by HS/GC/MS.

58. Plaintiff spent several hours in jail, his mugshot was taken and made publicly available, and his vehicle was seized and towed to the police impound yard.

59. Plaintiff incurred $3,500.00 in attorney's fees, was required to post bond, and incurred towing expenses.

60. Plaintiff would further show that items of his personal property which were seized upon his incarceration have not been returned to him.

61. Lacking any evidence of any arrestable offense committed by the Plaintiff, the General Sessions Court of Monroe County, Tennessee dismissed all charges on April 23, 2024.

62. The no valid legal basis Officers Shreiner and Yates-Matoy had for the initial traffic stop of Plaintiff was to determine if the tint on Plaintiff's windows violated state law.

63. Officers Shreiner and Yates-Matoy had no valid legal basis to extend the traffic stop.

64. Officers Shreiner and Yates-Matoy had no valid legal basis to search Plaintiff's vehicle.

65. Officers Shreiner and Yates-Matoy had no valid legal basis to cause Plaintiff to perform field sobriety tests.

66. Officers Shreiner and Yates-Matoy had no valid legal basis to arrest Plaintiff.

DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. §1983

All of the relevant acts of Defendants, their agents, servants, and employees, were carried out under the color of state law and in their official capacity as agents of the Department.

These acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fifth Amendments as incorporated against the States by the Fourteenth Amendment to the Constitution and in violation of 42 U.S.C. §1983.

8

Case 1:24-cv-00262-CLC-CHS   Document 1   Filed 08/01/24   Page 8 of 17   PageID #: 8

## FIRST COUNT
### Unlawful Seizure by Officers Shreiner and Yates-Matoy

67. Plaintiff realleges and incorporates by reference the allegations set forth above.

68. The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend IV.

69. A Fourth Amendment violation occurs where: (1) a person is seized; and (2) the seizure is unreasonable.

70. A seizure occurs where there is a physical force or a show of authority that in some way restrains the liberty of the person, and (as to a show of authority) that the person submits to the officers' show of authority.

71. A person has been seized within the meaning of the Fourth Amendment if, in view of the all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

72. Once a seizure occurs, the seizure must be reasonable.

73. An arrest is "unreasonable" where it is not based on probable cause to believe that the individual has committed or intends to commit a crime.

74. Pursuant to *Tennessee Code Annotated* §55-9-107, once the field comparison test had been conducted and a citation issued (if the tint was too dark) then Plaintiff should have been free to leave because a window tint violation is not an arrestable offense under Tennessee law.

75. Nonetheless, Officer Shreiner required Plaintiff to wait while Officer Shreiner conferred with Officer Yates-Matoy who was in the patrol car parked behind Plaintiff's vehicle.

76. A reasonable person under the circumstances would have believed (as Plaintiff did) that he was not free to leave.

9

Case 1:24-cv-00262-CLC-CHS   Document 1   Filed 08/01/24   Page 9 of 17   PageID #: 9

77. Officer Shreiner approached Plaintiff's vehicle after conferring with Officer Yates-Matoy and continued interrogating Plaintiff.

78. Officer Shreiner violated Plaintiff's rights by unlawfully detaining Plaintiff; by requiring Plaintiff to exit his vehicle to perform field sobriety tests without reasonable suspicion or probable cause to believe that Plaintiff was under the influence; and by denying Plaintiff's request for legal counsel.

79. The seizure of Plaintiff for driving under the influence was unreasonable because Officer Shreiner lacked probable cause and because no consent was requested or otherwise obtained.

80. Officer Yates-Matoy violated Plaintiff's rights by subjecting Plaintiff to additional field sobriety tests after Plaintiff had successfully completed the tests administered by Officer Shreiner without reasonable suspicion or probable cause to believe that Plaintiff was under the influence and without obtaining Plaintiff's consent for such testing.

81. The illegal seizure of Plaintiff's person and vehicle by Officer Shreiner and Officer Yates-Matoy was done in such a manner that no reasonable person would have thought that they were free to leave.

82. Plaintiff specifically requested for his lawyer to be present.

83. The illegal seizure of Plaintiff's vehicle and person without probable cause was a deprivation of his civil rights to be free from unlawful seizures under the Fourth and Fourteenth Amendments.

84. The purpose of Officer Yates-Matoy seizing Plaintiff was not for any lawful purpose, rather it was based upon what Officer Yates-Matoy perceived to know about Plaintiff's brother which he then attributed to Plaintiff, and Officer Yates-Matoy's presumption that Plaintiff would be under the influence which Plaintiff's blood alcohol test proved to be not true.

10

85. Plaintiff suffered damages associated with his arrest including but not limited to lost wages, legal fees, and towing expenses.

86. The Defendants acted intentionally, maliciously, or with callous disregard for Plaintiff's rights.

87. As a direct and proximate result of the acts and omissions of Officers Shreiner and Yates-Matoy, Plaintiff suffered a violation of his constitutional rights, harm to his reputation and standing in the community, mental distress, shame, humiliation, and embarrassment, and was therefore damaged in an amount to be determined by a jury.

## SECOND COUNT
### False Arrest And Illegal Search by Officer Shreiner and Officer Yates-Matoy

88. Plaintiff realleges and incorporates by reference the allegations set forth above.

89. To establish a state-law claim for false arrest and imprisonment, a plaintiff must prove: (1) a detention or restraint against the plaintiff's will; and (2) the unlawfulness of such detention or restraint.

90. False imprisonment requires that a defendant must have acted without probable cause.

91. For substantially the same reasons stated above as to the preceding Fourth Amendment claim, the Defendants falsely arrested and falsely imprisoned Plaintiff.

92. The primary duty of a State Trooper is to enforce Tennessee's traffic laws.

93. As previously discussed, Plaintiff should have only received a citation if an appropriate field comparison test confirmed that the tint on his vehicle windows was too dark.

94. Officer Shreiner violated the Plaintiff's rights by placing him under arrest without probable cause to believe that he was driving under the influence.

95. More than once, Officer Shreiner communicated to or indicated by his decision-making that he did not believe that Plaintiff was under the influence.

96. Officer Yates-Matoy took over the arrest despite an obvious lack of sufficient probable cause.

97. The purpose of Officer Shreiner's initial stop was for a lawful purpose to determine if Plaintiff's windows violated the requirements of *Tennessee Code Annotated* §55-9-107.

98. Officer Shreiner subsequently placing Plaintiff under arrest was not for any lawful purpose and was based solely upon Officer Yates-Matoy's personal knowledge of Plaintiff's brother and insistence that Plaintiff was driving under the influence despite Plaintiff successfully completing multiple field sobriety tests.

99. These actions were a physical restraint, a show of authority, and a show of force.

100. Plaintiff pulled to the side of the roadway upon being seized by the patrol vehicles' blue lights and cooperated with Officer Shreiner and Officer Yates-Matoy.

101. There were no exigent circumstances justifying the arrest of the Plaintiff.

102. The false arrest of Plaintiff was a deprivation of his civil rights to be free from arrest without necessary probable cause under the Fourth Amendment.

103. Based upon the arrest made without sufficient probable cause, Officer Shreiner and Officer Yates-Matoy undertook a warrantless search of Plaintiff's person and vehicle **after** Plaintiff asked for his lawyer to be present.

104. The illegal search of Plaintiff's vehicle and person was a deprivation of his civil rights to be free from unlawful searches under the Fourth Amendment.

105. A reasonably well-trained officer would know that there were no specific or articulable facts to justify searching Plaintiff's person and vehicle.

12

106. A reasonable person in Plaintiff's position would not have felt free to leave.

107. With respect to this show of authority, Plaintiff submitted without protest.

108. The seizure was made without probable cause and without legal process.

109. Plaintiff was transported to the local detention facility following his unlawful arrest to provide a blood sample.

110. The collection and analysis of a blood sample is a "search" within the meaning of the Fourth Amendment. See Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 618 (1989).

111. A search is unlawful if it is made without probable cause.

112. The Defendants, without reasonable suspicion or probable cause, intimidated the Plaintiff into providing a blood sample after he had specifically asked for his attorney.

113. As a result of these actions, Plaintiff suffered damages as identified above.

114. The Defendants were the cause in fact and proximate cause of Plaintiff's damages.

115. The Defendants acted intentionally, maliciously, or with callous disregard for Plaintiff's rights.

## THIRD COUNT
### State Law Claims of False Imprisonment

116. Plaintiff realleges and incorporates by reference the allegations set forth above.

117. Officer Shreiner and Officer Yates-Matoy falsely imprisoned Plaintiff and violated his rights by seizing his person and depriving him of his liberty without probably cause to believe that he had committed a crime.

118. The false imprisonment was a deprivation of Plaintiff's liberty without the requisite due process of law as defined under the Fourteenth Amendment and in violation of Tennessee State law.

13

119. As a direct and proximate result of the ats and omissions of Officers Shreiner and Yates-Matoy, Plaintiff suffered a seizure of his person, a violation of his constitutional rights, harm to his reputation and standing in the community, mental distress, shame, humiliation, and embarrassment, and was therefore damaged in an amount to be determined by a jury.

## FOURTH COUNT
Failure to Intercede and Prevent the Violation of Rights

120. Plaintiff realleges and incorporates by reference the allegations set forth above.

121. Officer Shreiner failed to intercede on behalf of Plaintiff even though Officer Shreiner knew or should have known that the actions being taken by Officer Yates-Matoy were an egregious violation of Plaintiff's rights.

122. Officer Shreiner knew and/or should have known that Plaintiff was unjustifiably seized, arrested, and jailed.

123. Officer Shreiner knew and/or had a duty to know that Plaintiff's constitutional rights were violated.

124. Officers Shreiner had realistic opportunities to intervene to prevent constitutional violations from occurring.

125. Defendants are liable for Officer Shreiner failing to intercede on Plaintiff's behalf to stop the violations made by Officer Yates-Matoy.

## FIFTH COUNT
Monell Claim

126. Plaintiff realleges and incorporates by reference the allegations set forth above.

127. On information and belief, the Tennessee Highway Patrol in the Knoxville area, which encompasses Monroe County, has a custom and culture of violating the constitutional rights of others.

128. Though not a written policy, this custom was so widespread as to have the force of law.

129. The Tennessee Highway Patrol in the Knoxville area has a history of wrongfully tolerating, condoning, and encouraging constitutional violations.

130. As a result, it has become the custom and culture of the Tennessee Highway Patrol in the Knoxville area to protect its officers when officers are known to have violated the constitutional rights of others.

131. The Tennessee Highway Patrol in the Knoxville area fails to properly train, supervise, investigate, and discipline its deputies and officers when violations of the constitutional rights of the citizens in Monroe County, Tennessee occur.

132. Upon information and belief, the Tennessee Highway Patrol in the Knoxville area, has acted with deliberate indifference to a pattern of past occurrences of constitutional violations of citizens such that its officers and deputies feel empowered to violate the constitutional rights of its targets with impunity.

133. The Tennessee Highway Patrol failed to properly train its officers about the grounds for investigating the offense of Driving Under the Influence and the proper means for evaluating whether a citizen is driving while under the influence of a drug or intoxicant.

manisSIXTH COUNT

Tennessee State Law Claims for Assault, Battery and Negligence
(as to Defendants Shreiner and Yates-Matoy)

134. Plaintiff realleges and incorporates by reference the allegations set forth above.

135. Plaintiff asserts violations of Tennessee state law by Defendants Shreiner and Yates-Matoy under *Tennessee Code Annotated* §39-13-101, et seq. (assault and battery) and

*Tennessee Code Annotated* §39-11-620 (requiring the use of reasonable force in effecting a lawful arrest).

136. The acts or omissions of these Defendants, as described herein, deprived Plaintiff of his rights under Tennessee state law and caused him the injuries and damages described in this Complaint.

## DAMAGES

137. Plaintiff realleges and incorporates by reference the allegations set forth above.

138. Defendants are liable to the Plaintiff, jointly and severally, for all wrongful acts which harmed and caused damage to him.

139. Defendants are liable to the Plaintiff for damages for all violations of his civil rights under the Constitution of the United States as defined by 42 U.S.C. §1983.

140. Based on the facts and circumstances described in this Complaint, and as a direct result of said acts and omissions of the Defendants, Plaintiff has suffered damage to reputation; past pain and suffering; past, present, and future emotional distress; and other financial losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Thomas Manis requests a trial by a JURY and that a judgment been entered against Defendants, jointly and severally, as follows:

1. Compensatory damages of at least One Million Dollars ($1,000,000.00) or such other amount supported by the evidence at trial;

2. Punitive damages in an amount to sufficiently deter Defendants from engaging in future behavior as described in this Complaint;

3. Attorneys' fees and costs of suit as provided by 42 U.S.C. §1988;

4. Court costs;

5. Pre- and post-judgment interest at the legal rate; and

6. Any and all other and further relief as the Court deems appropriate.

                                          Respectfully submitted,
                                          THOMAS MANIS, Plaintiff
                                          by his attorneys,

CHANCEY-KANAVOS

BY:   /s/ H. Franklin Chancey
        H. FRANKLIN CHANCEY, BPR #013187
        P.O. Box 42
        Cleveland, TN 37364
        (423) 479-9186
        franklin@cklplaw.com